# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO *EX REL.* GARY KING, ATTORNEY GENERAL,<br><br>    Plaintiff,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, INC., DISCOVER BANK, DFS SERVICES, L.L.C., ASSURANT, INC., and AMERICAN BANKERS MANAGEMENT CORPORATION, INC.,<br><br>    Defendants. | Case No. _____ |

## NOTICE OF REMOVAL

Defendants Discover Financial Services, Inc. ("DFSI"), Discover Bank ("Discover Bank") and DFS Services, L.L.C. ("DFS LLC") (together, "Defendants" or "Discover") hereby notice removal of this civil action from the District Court of the First Judicial District of Santa Fe County, New Mexico to the United States District Court for the District of New Mexico. This Court has jurisdiction under 28 U.S.C. § 1331 and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

In further support of this Notice of Removal, Defendants state as follows:

### PROCEDURAL HISTORY

1.      On April 17, 2013, the State of New Mexico, acting through Gary King, the New Mexico Attorney General, filed this action in the District Court of the First Judicial

LA 51652362v4

District of Santa Fe County, New Mexico.  A true and correct copy of the Complaint is attached as Exhibit 1.

2. The Complaint is directed at payment protection plans sold to Discover credit card holders.  Payment protection plans—also known as debt cancellation contracts and debt suspension agreements, *see* 12 C.F.R. Part 37—are optional amendments to credit card agreements.  Under these amendments, Discover suspends a cardholder's obligation to repay his or her credit card loans under circumstances covered by the plans.  Exhibit 3, Declaration of Nancy M. O'Keefe ("O'Keefe Decl.") ¶ 5; Ex. 1 ¶ 64.

3. The Attorney General alleges, among other things, that Discover's payment protection plans are "virtually worthless," that there is a "gross disparity between the value received by consumers and the price paid" for the plans, and that the plans are marketed and administered in violation of the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978, §§ 57-12-1, *et seq.*  Ex. 1 ¶¶ 83, 90, 93-94.

4. Counsel for the Attorney General served the Complaint and Jury Demand on counsel for Defendants on April 30, 2013.  Counsel for Defendants returned a Receipt and Acceptance of Complaint acknowledgement to counsel for the Attorney General, acknowledging their acceptance of service on behalf of Defendants effective April 30, 2013.  *See* Rule 1-004(G)(1)(a) NMRA.  A true and correct copy of all process served on Defendants is attached as Exhibit 2.  *See* 28 U.S.C. § 1446(a) (removing defendant must file "a copy of all process, pleadings, and orders served upon such defendant" in federal court).

## PARTIES

5. The named Plaintiff is the State of New Mexico, acting through its Attorney General, Gary King. Ex. 1 ¶¶ 9-10. The Attorney General does not contend that the State has paid any of the fees at issue in the Complaint. Nor does the Attorney General contend that the State has been injured as a result of the conduct alleged in the Complaint. Rather, the Attorney General seeks relief based on alleged injuries to, and conduct affecting, the New Mexico consumers who enrolled in and paid fees for payment protection plans. *E.g.*, *id.* at 26-27, ¶¶ 1, 2, 5, 42, 44, 94.

6. Discover Bank is a Delaware state-chartered bank headquartered in the State of Delaware. *See* Ex. 1 ¶ 13; O'Keefe Decl. ¶ 2. Discover Bank is an affiliate of DFS LLC, a limited liability company duly organized and existing under the laws of the State of Delaware, with its corporate headquarters and principal place of business in the State of Illinois, whose parent corporation and sole member also is organized and existing under the laws of the State of Delaware, with its corporate headquarters in the State of Illinois. *See* Ex. 1 ¶ 14; O'Keefe Decl. ¶ 3. DFSI is a non-existent entity that was improperly named as a defendant. *See* Ex. 1 ¶ 12; O'Keefe Decl. ¶ 3.

## TIMELINESS OF REMOVAL

7. Counsel for the Attorney General served the Complaint and Jury Demand on counsel for Defendants on April 30, 2013. *See supra* ¶ 4.

8. This notice is therefore timely pursuant to 28 U.S.C. § 1446(b) and Rule 6(a) of the Federal Rules of Civil Procedure. *See Murphy Bros., Inc. v. Michetti Pipe Stringing,*

*Inc.*, 526 U.S. 344, 347-48 (1999) (time for removal runs from receipt of formal service of process).

## BASIS FOR REMOVAL JURISDICTION

9. There are at least two independent grounds for removal. First, the complete preemption doctrine gives rise to jurisdiction under 28 U.S.C. § 1331. Second, jurisdiction exists under CAFA, 28 U.S.C. § 1332(d), because the Attorney General has asserted claims that qualify as "class action" and "mass action" claims within the meaning of that statute. Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over those claims, if any, that are not independently removable. Defendants also invoke all other grounds for removal that exist under applicable law.

10. Although the Attorney General includes a disclaimer of federal jurisdiction in his Complaint, Ex. 1 ¶ 20, that disclaimer is contradicted by the Complaint's substantive allegations giving rise to federal jurisdiction. Accordingly, the Attorney General's disclaimer is ineffective. *See Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1061 (10th Cir. 2006) ("[I]t is irrelevant what law the plaintiff cited in his state complaint, once the court decided that his purported state claim . . . actually arose under federal law.").

11. The recitation of the Attorney General's allegations, claims, and requests for relief below is not a concession that the Attorney General's allegations or legal theories have merit. Defendants reserve the right to assert all applicable defenses in this matter.

**I. Removal Based On Federal Question Jurisdiction, 28 U.S.C. § 1331**

12. Federal question jurisdiction exists when an action presents a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under

4

the well-pleaded complaint rule, a claim ordinarily arises under federal law only when a federal question is presented on the face of the complaint.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The complete preemption doctrine, however, provides an exception to the well-pleaded complaint rule and allows the removal of this action.

13. The complete preemption doctrine allows for the removal of cases in which the "pre-emptive force of a [federal] statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Caterpillar*, 482 U.S. at 393 (internal quotations omitted).

14. In *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003), the Supreme Court held that certain state-law claims against a national bank were completely preempted by the National Bank Act.  The Act specifies the amount of "interest" that a national bank may charge.  *See* 12 U.S.C. § 85.  The Act also provides the exclusive remedy for violations of 12 U.S.C. § 85.  *See id.* § 86.  In *Beneficial*, the Supreme Court held that a state-law usury claim directed at a national bank "arises under" federal law, and therefore is removable, even if the plaintiff purports to sue under state law.  539 U.S. at 8.  Likewise, Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d, completely preempts state-law usury claims against federally insured, state-chartered banks, such as Discover Bank.  *See Discover Bank v. Vaden*, 489 F.3d 594, 605 (4th Cir. 2007), *rev'd on other grounds*, 129 S. Ct. 1262 (2009); *In re Cmty. Bank*, 418 F.3d 277, 295 (3d Cir. 2005); *Greenwood Trust Co. v. Commonwealth of Mass.*, 971 F.2d 818, 826 (1st Cir. 1992).

15.     As described below, the complete preemption doctrine applies here because (1) Discover's payment protection fees are "interest" within the meaning of DIDA, and (2) the Complaint challenges the amount of these interest charges.

A.  <u>Discover's payment protection fees are a form of "interest."</u>

16.     The term "interest" as used in the National Bank Act includes "*any payment compensating a creditor or prospective creditor for an extension of credit*, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended."  12 C.F.R. § 7.4001(a) (emphasis added); *see also Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 745 (1996) (upholding 12 C.F.R. § 7.4001(a) as a reasonable definition of "interest").  According to 12 C.F.R. § 7.4001(a), fees that qualify as "interest" include, among other things, "*numerical periodic rates*, late fees, creditor-imposed not sufficient funds (NSF) fees . . . , overlimit fees, annual fees, cash advance fees, and membership fees."  *Id.* (emphasis added).  The broad meaning of "interest" under the National Bank Act applies equally to Section 521 of DIDA.  *See Discover Bank*, 489 F.3d at 606; *Greenwood Trust Co.*, 971 F.2d at 829-30.

17.     Discover's payment protection plans are amendments to a customer's credit card account agreement.  Although the plans are optional – a customer is not required to enroll in a plan in order to have a Discover credit card – the plans do not exist separately from a customer's credit card account.  Rather, the plans modify the extension of credit provided by the cardholder agreement.  Specifically, under a payment protection plan, a cardholder's obligation to repay his or her credit card loan is suspended under the circumstances covered by the plan.  In the event of a suspension of a cardholder's repayment obligations, the cardholder need not make

the minimum payment that otherwise would be due, as specified by the terms of the plan. In addition, interest does not accrue during a suspension period. Ex. 3, O'Keefe Decl. ¶ 5.

18. Discover's payment protection plans provide a number of benefits, including: (i) they relieve customers of minimum payment obligations, thus extending the term of the loan and allowing customers to retain loaned funds for a longer period of time before repaying them; (ii) they allow customers to retain loaned funds on more favorable terms (*i.e.*, without paying interest charges that would accrue in the absence of the plan, and without paying late fees that otherwise would accrue if the customer were to fail to make a minimum payment); (iii) they relieve customers from the prospect of breaching or defaulting on their credit card loan terms; and (iv) the plans may, under certain circumstances, permanently relieve customers of some or all of their loan balance. *Id.* ¶ 6.

19. Discover charges for the plans, which ordinarily are calculated as a percentage of the customer's outstanding loan balance. *Id.* ¶ 7. Those charges are a form of "interest" under the National Bank Act and DIDA because they compensate Discover for the extension of credit under the terms of the customer's credit card account agreement. *See Hawaii ex rel. Louie v. JPMorgan Chase & Co.*, __ F. Supp. 2d __, 2012 WL 6019709, at *21 (D. Haw. Nov. 30, 2012) ("*Louie*") (sustaining removal of a similar action under the complete preemption doctrine).[1]

---

[1]   An appeal of the *Louie* decision is pending before the Ninth Circuit. *See Hawaii ex rel. Louie v. JPMorgan Chase & Co.*, No. 13-80018 (9th Cir. Apr. 1, 2013). The appeal has not yet been briefed or argued. Although *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984 (S.D. W. Va. 2012), concluded that an unfair and deceptive practices action directed at payment protection plans was not removable on a complete preemption theory, the *West Virginia* action is distinguishable.   The factual record before the court in *West Virginia* was (continued…)

B. <u>The Complaint challenges the amount of interest that Discover charges for its payment protection plans.</u>

20. The Complaint contains a series of allegations that challenge Discover's payment protection fees as unfair and unconscionable under the NMUPA. For example, the Complaint alleges that Discover's fees are "unconscionable" because there is a "gross disparity between the value received by consumers and the price paid" for payment protection plans. Ex. 1 ¶¶ 89, 93. The Complaint also asserts that Discover has "amassed substantial sums of money from the monthly charges for these Plans," despite the fact that the plans allegedly "offer little to no benefit," "have limited or no value," are "virtually worthless," and "provide[] virtually no benefit to [New Mexico] consumers." *Id.* ¶¶ 8, 29, 33, 60, 66, 83-84. The Attorney General thus seeks to hold Discover liable on the theory that its payment protection fees are excessive compared to the value its plans deliver to consumers. The court in *Louie* held that similar allegations gave rise to federal jurisdiction because they challenged the amount of interest that Discover charged for its payment protection plans. *See* 2012 WL 6019709, at *21-22.

21. The Complaint also alleges that Discover has "charge[d] New Mexico consumers higher fees" in violation of the NMUPA by declining to classify its payment protection plans as a form of insurance subject to state insurance regulation. *See, e.g.*, Ex. 1 at 14 & ¶¶ 51, 53, 68. According to the Complaint, if Discover had properly complied with state

---

not comparable to the factual record established by the declaration submitted with this removal notice; as a result, in *West Virginia*, the court accepted erroneous characterizations of the defendants' payment protection plans and relied on those characterizations in its remand order. *See, e.g.*, *id.* at 988, 990. Furthermore, the claims and allegations asserted in *West Virginia* are different from those asserted here.

insurance regulation, it would have charged lower fees and earned lower profits on these plans. *See id*. ¶¶ 53-54.

22.     Finally, the Complaint accuses Discover of violating New Mexico law by allowing interest to accrue on the fees it charges for its payment protection plans.  After setting forth the manner in which Discover calculates payment protection fees, Ex. 1 ¶ 77, the Complaint contends that these fees "create[] a cycle of profitability," in that "the fee itself increases consumers' monthly credit balances."  *Id.* ¶ 78.  According to the Complaint, by imposing charges that increase monthly credit balances, Discover is able to charge additional interest and impose additional payment protection fees.  *Id.*  These allegations and others seek to hold Discover liable based on the compound interest, overlimit fees, and payment protection fees that Discover allegedly earns in connection with its payment protection plans.  All of these charges are "interest" within the meaning of the National Bank Act and Section 521 of DIDA.

23.     Because the Complaint seeks to impose liability on Discover based on the amount of interest and fees collected, the Attorney General's claims are "completely preempted" by DIDA, which provides the exclusive remedy for such claims.

**II.  Removal Based On The Class Action Fairness Act, 28 U.S.C. § 1332(d)**

24.     This Court also has jurisdiction over this action under CAFA, 28 U.S.C. § 1332(d).  As detailed below, this case is (1) a proposed class action within the meaning of CAFA, in which (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (3) the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100," and (4) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), d(6).

25. CAFA defines a "class action" in two ways.  First, a "class action" includes "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute . . . authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Second, a "class action" includes any "mass action."  *Id.* § 1332(d)(11)(A).  A "mass action" is a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  *Id.* § 1332(d)(11)(B)(i).  A complaint may be removed under CAFA even when the pleading is not denominated as a mass action or a class action.  *See, e.g.*, *Miss. ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 803 (5th Cir. 2012), *cert. granted*, 2013 WL 655204 (U.S. May 28, 2013); *La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008); *W. Va. ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 445 (E.D. Pa. 2010).  This case is removable because it is both a "mass action" and a "class action" under CAFA.

26. It is an open question in this Circuit whether actions filed by the State as *parens patriae* are removable under CAFA.  *See BP Am., Inc. v. Okla. ex rel. Edmondson*, 613 F.3d 1029, 1035 (10th Cir. 2010) (granting discretionary review of district court decision that remanded *parens patriae* action removed under CAFA and describing issues to be reviewed as "eminently debatable legal questions").  In addition, the question is now squarely before the Supreme Court.  *See AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012), *cert. granted*, 2013 WL 655204 (U.S. May 28, 2013); *see also* Petition for Writ of Certiorari, *AU Optronics Corp. v. South Carolina*, No. 12-911 (U.S. Jan. 23, 2013).

LA 51652362v4

    A.  CAFA's "class action" requirement is satisfied.

27.    This case is removable both as a "mass action" under 28 U.S.C. § 1332(d)(11) and as a "class action" under 28 U.S.C. § 1332(d)(1)(B).

    1.  *This case is a "mass action" under 28 U.S.C. § 1332(d)(11).*

28.    This action is removable as a CAFA "mass action" because more than 100 New Mexico citizens are real parties in interest. *See AU Optronics*, 701 F.3d at 803 (holding that a similar *parens patriae* action was a "mass action" removable under CAFA because consumers were real parties in interest). An individual is a real party in interest when he has a direct and personal stake in the litigation. *See, e.g.*, *id.* at 800 (real parties in interest are those "who, by substantive law, possess[] the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery" (internal quotation marks omitted)).

29.    The Attorney General filed this lawsuit "to protect New Mexico consumers" pursuant to his authority under Section 57-12-8 of the NMUPA, which authorizes him to seek restitution for injured consumers.[2] *See* Ex. 1 ¶¶ 10 & n.4, 18, 86; NMSA 1978, § 57-12-8(B); *see also State ex rel. Stratton v. Sinks*, 106 N.M. 213, 220, 741 P.2d 435, 442 (Ct. App. 1987) (trial court awarded restitution to New Mexico Attorney General in NMUPA suit claiming violations against consumers). Furthermore, the Complaint confirms that the Attorney General seeks "[a]ll . . . relief as provided by law and/or as the Court deems appropriate and just." Ex. 1 at 27. New Mexico consumers who allegedly were injured by the challenged practices are thus among the real parties in interest in this action.

---

[2] Notwithstanding the relief sought by the Attorney General, restitution is not available with respect to New Mexico consumers who released their claims pursuant to the settlement in *Walker v. Discover Fin. Servs.*, No. 10-cv-6994 (N.D. Ill.).

### 2. *This case is a "class action" under 28 U.S.C. § 1332(d)(1)(B).*

30. This case also qualifies as a class action removable under § 1332(d)(1)(B) because the Attorney General brings claims on behalf of a select class of New Mexico consumers.

31. Section 1332(d)(1)(B)'s definition of a "class action" must be "interpreted liberally," and "lawsuits that resemble a purported class action should be considered class action[s] for the purpose of applying these provisions." *Caldwell*, 536 F.3d at 424 (quoting S. Rep. No. 109-14 at 35). Because CAFA is intended to prevent "jurisdictional gamesmanship," a court must "look to the substance of the action and not only at the labels that the parties may attach." *Id.*

32. Here, the Attorney General has filed this action on behalf of the class of New Mexico citizens who enrolled in the challenged plans. The Attorney General does not seek relief for violations of law committed against the State. Rather, the Attorney General seeks relief for violations of the NMUPA allegedly committed against New Mexico consumers. Ex. 1 ¶¶ 1, 7, 90. By bringing claims for violations of the NMUPA allegedly committed against individual consumers in a representative capacity, the Attorney General has brought a class action within the meaning of CAFA.

33. The context of this action further confirms that it is appropriately viewed as a class action. This action is one of nine parallel actions that the Attorney General has filed in state court against major credit card issuers who have offered payment protection plans in New

12

Mexico.[3] These nine actions follow on the heels of a series of private class actions that asserted virtually identical consumer protection claims against the same set of credit card issuers.[4] Furthermore, the same class action law firm that brought many or most of the private class actions—the Carney Williams firm located in Little Rock, Arkansas—represents the Attorney General in the nine parallel actions that were filed in New Mexico.[5] The Carney Williams firm generally has either settled or lost the private class actions that it filed,[6] but now seeks a second

---

[3] *See N.M. ex rel. King v. Barclays Bank Del.*, No. D-101-CV-2013-01073 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. Capital One Bank (USA) N.A.*, No. D-101-CV-2013-01074 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. Bank of Am. Corp.*, No. D-101-CV-2013-01076 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. JPMorgan Chase & Co.*, No. D-101-CV-2013-01077 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. Citigroup Inc.*, No. D-101-CV-2013-01078 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. HSBC Bank Nev., N.A.*, No. D-101-CV-2013-01084 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. First Premier Bank*, No. D-101-CV-2013-01087 (N.M. Dist. Ct. Apr. 17, 2013); *N.M. ex rel. King v. Discover Fin. Servs., Inc.*, No. D-101-CV-2013-01107 (N.M. Dist. Ct. Apr. 17, 2013).

[4] *See, e.g.*, *Esslinger v. HSBC Bank Nevada, N.A.*, No. 10-3213, 2012 WL 5866074, at *1 (E.D. Pa. Nov. 20, 2012); *Kardonick v. Citigroup, Inc.*, No. 10-23023-CV, 2012 WL 3594359, at *1 (S.D. Fla. Aug. 16, 2012); *Denton v. Dep't Stores Nat'l Bank*, No. C10-5830, 2011 WL 3298890, at *1 (W.D. Wash. Aug. 1, 2011); *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at *1 (N.D. Ill. May 26, 2011); *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 600 (M.D. Fla. 2009).

[5] *See, e.g.*, *Miller Law Firm, P.C. v. Carney William Bates Bozeman & Pulliam, PLLC*, No. 12-14951, 2013 WL 718764, at *1 (E.D. Mich. Feb. 27, 2013) ("Defendants are alleged to have filed a number of similar [payment protection] cases.").

[6] *See, e.g.*, *Spinelli v. Capital One Bank*, No. 08-cv-132, Doc. No. 231 (M.D. Fla. Nov. 23, 2010) (settlement approval order); *Kardonick v. JPMorgan Chase & Co.*, No. 10-cv-23235, Doc. No. 384 (S.D. Fla. Sept. 16, 2011) (settlement approval order); *Walker*, No. 10-cv-06994, Doc. No. 177 (N.D. Ill. May 10, 2012) (settlement approval order); *Esslinger*, No. 10-3213, 2012 WL 5866074, at *1 (E.D. Pa. Nov. 20, 2012) (settlement approval order); *In re Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*, No. 11-md-2269, Doc. No. 96 (N.D. Cal. Jan. 16, 2013) (settlement approval order); *Giles v. GE Money Bank*, No. 2:11-cv-434 JCM CWH, 2011 WL 4501099, at *5 (D. Nev. Sept. 27, 2011) (dismissing payment protection action filed by Carney Williams); *Denton v. Dep't Stores Nat'l Bank*, No. 10-CV-5830, 2012 WL 1204940, at *5 (W.D. Wash. Apr. 11, 2012) (dismissing most claims in payment protection class action filed by Carney Williams).

bite at the apple through the dubious tactic of filing duplicative state attorney general actions. This litigation thus represents the continuation of prior class action lawsuits in an amended form.

34.     CAFA's legislative history confirms that representative actions brought by state attorneys general who are represented by outside counsel should properly be considered "class actions." *See* 151 Cong. Rec. S1157-02, at S1163-64 (daily ed. Feb. 9, 2005) (statement of Sen. Hatch) (opposing amendment that would have exempted all class actions filed by state attorneys general from CAFA removal because of the risk of "creating a situation where State attorneys general can be used as pawns so that crafty class action lawyers can avoid [CAFA's] jurisdictional provisions" by "simply includ[ing] in their complaint a State attorney general's name as a purported class member").

35.     The Attorney General has thus filed a "class action" that is removable to federal court. *See, e.g.*, *Comcast*, 705 F. Supp. 2d at 445-52 (upholding CAFA removal of state consumer protection action brought on behalf of consumers by state attorney general).

B.  CAFA's minimal diversity requirement is satisfied.

36.     CAFA's minimal diversity requirement is satisfied because New Mexico consumers are real parties in interest in this litigation. The citizenship of real parties in interest controls for purposes of diversity jurisdiction. *See Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1244 (10th Cir. 2005) ("HBIA was always the real party in interest on the claims asserted . . . and its citizenship was determinative for purposes of jurisdiction."). As explained above, New Mexico consumers who were allegedly injured by the challenged practices are among the real parties in interest in this litigation.

LA 51652362v4

37. Defendants are not citizens of New Mexico because they are not incorporated in New Mexico and do not have their main offices or principal places of business in New Mexico. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1348; *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) (national bank is "located" for diversity purposes where it has its main office).

38. Because Defendants are diverse from the New Mexico consumers who are real parties in interest in this case, CAFA's minimal diversity requirement is satisfied. *See AU Optronics*, 701 F.3d at 802; *Comcast*, 705 F. Supp. 2d at 444 (finding minimal diversity where Attorney General brought claims for violations against consumers).

C. CAFA's numerosity requirement is satisfied.

39. This is not an action in which the "number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). The Attorney General brings this action to redress alleged NMUPA violations against New Mexico consumers who enrolled in payment protection plans. According to Discover's records, there are thousands of New Mexico residents who fit that description. Ex. 3, O'Keefe Decl. ¶ 8. Thus, the size of the putative class in this case exceeds the numerosity requirements imposed by 28 U.S.C. § 1332(d)(5)(B) and 28 U.S.C. § 1332(d)(11)(B)(i).

D. CAFA's amount-in-controversy requirement is satisfied.

40. For jurisdiction to exist under CAFA, "the matter in controversy [must] exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy" meets the $5,000,000 threshold. *Id.* § 1332(d)(6).

15

41.     The relief that is potentially available to the plaintiff or plaintiff class determines the amount in controversy at issue. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349-50 (2013) (complaint's disclaimer of intent to seek relief in excess of $5 million in the aggregate did not defeat CAFA jurisdiction); *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (a district court must not "treat[] the plaintiff's pleadings as dispositive" when determining the amount in controversy); *McPhail v. Deere & Co.*, 529 F.3d 947, 957 (10th Cir. 2008) (amount in controversy calculation properly takes into account all relief available under the plaintiff's cause of action).

42.     The CAFA amount-in-controversy threshold is satisfied as follows:

a.      The Complaint seeks civil penalties of up to $5,000 for "each" alleged violation of the NMUPA under NMSA 1978, § 57-12-11. *See* Ex. 1 ¶¶ 95-96. Based on these allegations and the fact that thousands of New Mexico residents have enrolled in the challenged plans, the claim for civil penalties exceeds $5,000,000. *See* Ex. 3, O'Keefe Decl. ¶ 8.

b.      As noted above, the Attorney General seeks restitution on behalf of allegedly injured consumers under NMSA 1978, § 57-12-8(B). The charges at issue exceed $5,000,000. *See* Ex. 3, O'Keefe Decl. ¶ 8.

c.      The Complaint seeks injunctive relief. *See* Ex. 1 at 26. The cost to Discover of complying with the requested injunction therefore counts toward the amount in controversy. *See Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1182-83 (D.N.M. 2012).

        d.      The Complaint seeks the relief made available to private parties under NMUPA Section 57-12-10.  For example, the Complaint seeks attorney's fees "as authorized by NMUPA," Ex. 1 at 26, but the only section of NMUPA that authorizes attorney's fees is Section 57-12-10.  The amount in controversy thus includes the Attorney General's claims for attorney's fees, *see Wiatt v. State Farm Ins. Cos.*, 560 F. Supp. 2d 1068, 1075 (D.N.M. 2007), and for damages to consumers.  The amount in controversy exceeds $5,000,000 for these reasons as well.  *See* Ex. 3, O'Keefe Decl. ¶ 8.

43.      For the foregoing reasons, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), and this action is removable pursuant to 28 U.S.C. §§ 1441, 1453.

**III. Supplemental Jurisdiction Under 28 U.S.C. § 1367**

44.      This Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any claims that are not independently removable.  *See* 28 U.S.C. § 1367(a).

**CONSENT TO REMOVAL**

45.      Although, upon information and belief, they have not been properly served with process in this action, defendants Assurant, Inc. and American Bankers Management Company, Inc. consent to the removal of this action to the United States District Court for the District of New Mexico.  *See* Exhibit 4.

**REMOVAL TO THE DISTRICT OF NEW MEXICO IS PROPER**

46.      Removal to the District of New Mexico is proper because it is the district within which the state action is pending.  *See* 28 U.S.C. § 1446(a).

### NOTICE TO STATE COURT AND PLAINTIFF

47. Counsel for Defendants certify that, pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal will be filed with the Clerk of the First Judicial District, County of Santa Fe, New Mexico and served upon the Attorney General promptly.

WHEREFORE, the case now pending in the District Court of the First Judicial District of Santa Fe County, New Mexico, Case No. D-101-CV-2013-01107, is hereby removed to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. §§ 1441 and 1453.

DATED: May 30, 2013

        Respectfully Submitted,

        **COMEAU, MALDEGEN, TEMPLEMAN & INDALL, L.L.P.**

        By:    /s/ Michael R. Comeau
             Michael R. Comeau
             Marshall G. Martin
             141 East Palace Ave.
             Santa Fe, NM 87501
             Tel: (505) 982-4611
             Email: mcomeau@cmtisantafe.com

        *Attorneys for Discover Financial Services, Inc., Discover Bank and DFS Services, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2013, a true and correct copy of the foregoing Notice of Removal was served on the following counsel for Plaintiff by U.S. mail:

Scott Fuqua, Esq.
Assistant Attorney General
Office of New Mexico Attorney General Gary King
408 Galisteo Street
Santa Fe, NM 87501

Allen Carney, Esq.
Randall K. Pulliam, Esq.
Carney Bates & Pulliam, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212

Turner W. Branch, Esq.
The Branch Law Firm
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104

Charles Peifer, Esq.
Robert E. Hanson, Esq.
Peifer, Hanson & Mullins, P.A.
P.O. Box 25245
Albuquerque, NM 87125

By:    /s/ _____
       Michael R. Comeau