# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STATE OF NEW MEXICO *EX REL*., GARY KING, ATTORNEY GENERAL, | : : : | |
| Plaintiff, | : : | |
| vs. | : : | Case No. <u>1:13-cv-00503-MV-ACT</u> |
| DISCOVER FINANCIAL SERVICES, INC., DISCOVER BANK, AND DFS SERVICES, L.L.C. | : : : : | |
| Defendants. | : : | |

# PLAINTIFF'S OPPOSITION TO DEFENDANT
# DISCOVER'S MOTION TO DISMISS CONSUMER
# CLAIMS PURSUANT TO CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................... 2

III.  ARGUMENT .......................................................................................................... 3

     A.    The *Res Judicata* Doctrine is Wholly Inapplicable. ...................................... 3

          1.    Plaintiff was not a Party to the Payment Protection MDL and the
Attorney General is not in Privity with any of the Parties to the MDL. .............. 4

          2.    The Facts and Causes of Action Brought in the Current Litigation
are not the Same Claims Brought in the MDL. ................................................. 11

          3.    The Attorney General did not have any Opportunity to Litigate the
State's Claim in the MDL. .................................................................................. 13

     B.    Neither the Attorney General, nor the State of New Mexico, is a Party to the
MDL Settlement Agreement, and Therefore Cannot be Bound by the
Agreement's Release or the Injunction........................................................... 14

          1.    The Plain Language of the Settlement Agreement Makes Clear that
Neither the Attorney General, nor the State of New Mexico, is a Party
to the MDL Settlement Agreement.................................................................... 14

          2.    It Is Axiomatic That A Party Cannot Be Bound By a Settlement to Which
it is not a Party. ................................................................................................. 15

          3.    The Current Enforcement Action was not Brought "on Behalf of" the
Settlement Class Members, Rather It Was Brought on Behalf of  the
State of New Mexico. ........................................................................................ 18

          4.    The MDL Court does not have *In Personam* Jurisdiction Over the
State of New Mexico and its Attorney General. ............................................... 19

  IV.  CONCLUSION.................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### <u>CASES</u>

*AAL High Yield Bond v. Deloitte & Touche* LLP,
 361 F.3d 1305 (11th Cir. 2004) ............................................................ 15

*Clark v. Haas Group, Inc.*,
 953 F.2d 1235 (10th Cir. Colo. 1992)................................................... 11

*Commodity Futures Comm'n v. Commercial Hedge Serv., Inc.*,
 422 F. Supp. 2d 1057 (D. Neb 2006)..................................................... 16

*Commodity Futures Trading Commission v. Commercial Hedge Services, Inc.*,
 422 F. Supp.2d 1057 (D. Neb. 2006)....................................................... 9

*Donovan v. Cunningham*,
 716 F.2d 1455 (5th Cir. 1983) ................................................................ 7

*E.E.O.C, v. Goodyear Aerospace Corp.*,
 813 F.2d 1539 (9th Cir. 1987) ................................................................ 7

*E.E.O.C, v. Kimberly-Clark Corp.*,
 511 F.2d 1352 (6th Cir. 1975) ................................................................ 7

*E.E.O.C, v. Waffle House Inc.*,
 534 U.S. 279 (2002)............................................................................... 15

*FTC v. Ameridebt, Inc.*,
 343 F.Supp.2d 451 (D. Md. 2004) ........................................................... 9

*FTC v. U.S. Oil and Gas Corp.*,
 1987 U.S. Dist. LEXIS 16137, at *55-56 (S.D. Fla. 1987) ..................... 9

*General Tel. Co. v. E.E.O.C*,
 446 U.S. 318, 326, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1980)................ 7

*Hansberry v. Lee*,
 311 U.S. 32, 40, 85 L. Ed. 22, 61 S. Ct. 115 (1940)............................. 16

*Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1422-23 (11th Cir. 1998) ............... 10, 16

*In re Rationis Enter., Inc. of Panama*,
 261 F.3d 264 (2d Cir. 2001) ................................................................. 19

*Labor v. Fitzsimmons*,
 805 F.2d 682 (7th Cir. 1986) .................................................................. 7

*Minnesota Assoc. of Health Care Facilities, Inc. v. Minnesota Dept. of Pub. Welfare*,
 742 F.2d 442 (8th Cir. 1984) .................................................................. 9

*Nevada v. Bank of Am. Corp.*,
 672 F.3d 661 (9th Cir. 2012) .............................................................. 5, 19

*NLRB v. Donna-Lee Sportswear Co.*,
    836 F.2d 31 (1st Cir. 1987) ................................................................................ 6

*Nwosun v. General Mills Restaurants, Inc.*,
    124 F.3d 1255 (10th Cir. 1997) ............................................................... 4, 11, 13

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..................................................................................... 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 812 (1985) ............................................................................. 17

*Plotner v. AT&T Corp.*,
    224 F.3d 1161, 1168 (10th Cir. 2000) ......................................................... 4, 11

*Rex Inc. v. Manufactured Housing Committee*,
    892 P.2d 947 (N.M. 1995) ............................................................................ 6

*Spinelli v. Capital One Bank, USA*,
    No. 8:08-cv-132-T, 2012 U.S. Dist. LEXIS 118667 at *1 (M.D. Fla. Aug. 22, 2012) ........... 17

*United States v. Katz*,
    No. 10 Civ. 3335, 2011 U.S. Dist. LEXIS 59159, at *15 (S.D.N.Y. June 2, 2011) ................. 16

*Weitzman v. Stein*,
    897 F.2d 653 (2d Cir. 1990) ......................................................................... 19

*West Virgina v. CVS Pharm., Inc.*,
    646 F.3d 169 (4th Cir. 2011) ..................................................................... 5, 18

*Whetstone Candy Co. v. Kraft Foods Inc.*,
    351 F.3d 1067 (11th Cir. 2003) ...................................................................... 15

## RULES

12 USCS § 5552 ...................................................................................... 6, 12,19

N.M. Stat. Ann. §§ 57-12-8 and 57-12-15 ................................................ 6, 12, 19

I.      **INTRODUCTION**

This enforcement action was brought on behalf of the State of New Mexico by the honorable New Mexico Attorney General Gary King against Discover Financial Services, Inc., Discover Bank and DFS Services, L.L.C. ("Discover" or "Defendants"), in connection with the marketing and sales of certain fee-based products ("Ancillary Plans") that were sold by the Defendants to New Mexico credit card holders.  The primary products at issue were offered by the Defendants and marketed under the names "Discovery Payment Protection," and the like (collectively, "PPP," "Payment Protection Plan(s)" or "Payment Protection"). As set forth in Plaintiff's Amended Complaint, the Defendants engaged in deceptive marketing and sales practices by enrolling customers in Ancillary Plans without their knowledge or consent, selling the product to ineligible customers, failing to adequately disclose the terms and conditions, and improperly administering claims.

Defendants filed the instant Motion to Dismiss the State's claims for monetary compensation and restitution[1], arguing that a prior settlement agreement between Defendants and a consumer class relating to PPPs bars the current action. Specifically, Defendants argue that in light of the prior settlement: (1) the doctrine of *res judicata* bars the Attorney General's claims, and (2) the release language in the prior settlement agreement binds the State of New Mexico. These arguments are without merit and must be rejected.

First, the doctrine of *res judicata* does not apply because (1) neither the Attorney General of New Mexico, nor the State of New Mexico, were parties to the prior litigation or are/were in

---

[1] Defendants are not moving to dismiss the State's claims for civil penalties. *See* Defs' Motion to Dismiss [Dkt# 26] at p. 2. Thus, the Defendants' pleading is actually only a Partial Motion to Dismiss.

privity with the parties in the prior litigation,[2] (2) the two suits allege different causes of action, and (3) neither the Attorney General, nor the State of New Mexico, had any opportunity to litigate the claims in the prior suit. Second, because neither the Attorney General, nor the State of New Mexico, were parties to the settlement agreement in the prior litigation, it would be a violation of well-established contract law and the Due Process clause of the U.S. Constitution to bind the State to the terms of that settlement. Third, the current enforcement action was brought by the Attorney General on behalf of the State of New Mexico to protect the State's sovereign interests in remedying violations of the New Mexico Unfair Practices Act ("NMUPA") and the Dodd-Frank Act. The Attorney General has clear authority under both statutes to bring this action on behalf of the State, and that authority must not be usurped or limited based on a prior suit in which the State was not a party.

Finally, the court in the prior litigation lacks *in personam* jurisdiction over the State of New Mexico and its Attorney General. Therefore, the injunction in the Payment Protection MDL Final Approval Order ("Final Approval Order") cannot bind the State in this action.

## II.    <u>BACKGROUND</u>

Between July 8, 2010 and March 7, 2011 several consumer class actions were brought in various courts throughout the country against Discover in connection with Discover's payment protection products.  In February of 2011, these actions were transferred to a Multi-District Litigation proceeding in the Northern District of Illinois, entitled *In re: Discover Payment Protection Plan Marketing and Sales Practices Litigation,* MDL No. 2217 ("Payment Protection MDL"). On May, 10, 2012, the Northern District of Illinois entered an Order of Final Approval of Class Action Settlement in the Payment Protection MDL.  The Final Approval Order and Settlement Agreement in that case made clear that the only parties bound to the agreement were

---

[2]The prior litigation referenced throughout this brief is *In re: Discover Payment Protection Plan Marketing and Sales Practices Litigation,* MDL No. 2217 ("Payment Protection MDL").

the individual class members, and not any governmental entities.   Specifically, the Final Approval Order explicitly applies to the named plaintiffs, the defendants, and the "Settlement Class" *See* Final Approval Order attached hereto as Exhibit A.   Significantly, "Settlement Class" is defined under the Order as:

> All **persons** in the United States **who were enrolled in or billed for** Discover Payment Protection, AccountGuard, Indentity Theft Protection, Profile Protect, Wallet Protection, The Register and/or Credit Score Tracker between January 21, 2004 and November 9, 2011.

*See id.* at ¶2 (*emphasis added*).

On July 2, 2013, the State of New Mexico by the honorable New Mexico Attorney General Gary King, filed its Amended Complaint in this action.   *See* Plaintiff's Amended Complaint [DE 14] attached hereto as Exhibit B. This action was not brought by or on behalf of any of the Settlement Class Members in the Payment Protection MDL.   *Id.*   Rather this action was brought on behalf of the State of New Mexico to protect the State's sovereign interests in remedying violations of the NMUPA and Dodd-Frank Act. Regardless of the clear and negotiated language from the MDL settlement, the Defendants now seek to enjoin the State, a non-party to the agreement, from bringing a wholly different action against them regarding Ancillary Plans.

## III.   <u>ARGUMENT</u>

### A.   <u>The *Res Judicata* Doctrine is Wholly Inapplicable.</u>

Defendants claim that the Final Approval Order bars the Attorney General from bringing claims for damages and restitution in this enforcement action pursuant to the doctrine of *res judicata*. However, the elements needed to apply the doctrine of *res judicata* are simply not present here.

In order for the doctrine of *res judicata* to bar claims, the following four requirements must be met: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (*quoting Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997)).

While the Final Approval Order is considered a judgment on the merits, none of the remaining elements have been met. As discussed below, (1) neither the Attorney General of New Mexico, nor the State of New Mexico were parties in the Payment Protection MDL, and neither were in privity with any of the parties in the MDL action; (2) the Final Approval Order and Settlement Agreement are based on different causes of action as the State's Complaint; and (3) the State of New Mexico did not have any opportunity to litigate the claims in the MDL. For these reasons, the Attorney General's claims are not barred by *res judicata*.

### 1.      Plaintiff was not a Party to the Payment Protection MDL and the Attorney General is not in Privity with any of the Parties to the MDL.

The plain language of the Final Approval Order makes it abundantly clear that neither the Attorney General, nor the State of New Mexico, were parties to the Payment Protection MDL or the settlement of the litigation. Indeed, the Final Approval Order explicitly applies to the named plaintiffs, the defendants, and the "Settlement Class" *See* Exhibit A. The Final Approval Order explains that the definitions set forth in the parties' Settlement Agreement are incorporated into the Order. *See id.* at ¶1. Significantly, "Settlement Class" is defined under the Order as:

> All **persons** in the United States **who were enrolled in or billed for** Discover Payment Protection, AccountGuard, Indentity Theft Protection, Profile Protect, Wallet Protection, The Register and/or Credit Score Tracker between January 21, 2004 and November 9, 2011.

*See id.* at ¶2 (*emphasis added*).  This definition clearly does not include the State of New Mexico or its Attorney General.

While Defendants appear to concede that the parties to the MDL are not identical, they nonetheless argue that the Attorney General is in privity with the Settlement Class Members. Specifically, Defendants claim that: "insofar as the Attorney General seeks to bring claims for monetary relief on behalf of New Mexico consumers, who were members of the Payment Protection MDL Settlement Class, he is in privity with those consumers." *See* Defs' Motion to Dismiss Consumer Relief ("Defs' Motion to Dismiss") at p. 12. This privity argument fails for several reasons.

First, and perhaps most significantly, the assumption underlying Defendants' privity argument — that the Attorney General is bringing claims on behalf New Mexico consumers—is incorrect. This enforcement action was brought by the Attorney General on behalf of the State of New Mexico to protect the State's sovereign interests in remedying violations of the NMUPA and Dodd-Frank Act. It is widely recognized that in enforcement actions such as this one, the state is the real party in interest and the claims raised are not raised on behalf of individual consumers. For example, in *West Virgina v. CVS Pharm., Inc.,* 646 F.3d 169 (4th Cir. 2011), the Fourth Circuit held that where an attorney general "files suit independently of any consumer complaints, as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests, as well as the individual interests of the State's citizens," then the state, not any group of consumers, is the real party in interest. *Id.* at 176.

By way of further example, in *Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012), the Nevada Attorney General sued, pursuant to his statutory authority under Nevada's consumer protection law, to protect hundreds of thousands of homeowners in the state who were defrauded by Bank of America. *Id.* at 670. The Court held that under these circumstances

"Nevada - not the individual consumers - is the real party in interest in the controversy." *Id*. In so holding, the Ninth Circuit stressed that, "Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices is not diminished merely because it has tacked on a claim for restitution." *Id*. at 671.

Similarly here, the current action was brought by the New Mexico Attorney General pursuant to his authority under NMUPA and the Dodd-Frank Act, in the name of the State of New Mexico. The Attorney General is explicitly charged with administration of NMUPA, and may act *sua sponte* as the agent and legal representative of the State in civil proceedings to enforce the statute. *See* N.M. Stat. Ann. §§ 57-12-8 and 57-12-15. Additionally, the Attorney General is the only party who may bring an action for violations for Regulation Z, as promulgated under the Dodd-Frank Act. *See* 12 USCS § 5552. In accordance with NMUPA and the Dodd-Frank Act, this action was brought on behalf of New Mexico, not individual consumers. Therefore, the Attorney General is not in privity with any of the Settlement Class members.

Second, Defendants' argument is undermined by New Mexico law regarding the meaning of the term "privity" in the *res judicata* context. In fact, the very case Defendants use to support its privity argument, *Rex Inc. v. Manufactured Housing Committee*, 892 P.2d 947 (N.M. 1995), demonstrates precisely why Defendants' argument must fail. In *Rex Inc*., the New Mexico Supreme Court considered whether the Manufactured Housing Committee, a state agency, was collaterally estopped from bringing an administrative action against a manufactured home dealer to recover money on behalf of a consumer by a settlement agreement between that dealer and the consumer. *Id.* at 954.  In considering this issue, the court looked at the meaning of the term "privity" and concluded that the "concept of privity with respect to issue preclusion has been defined as 'that relationship between two parties which is sufficiently close so as to bind them

both to an initial determination, at which only one of them was present.'" *Id*. at 954 (*quoting NLRB v. Donna-Lee Sportswear Co.,* 836 F.2d 31, 35 (1st Cir. 1987). The court went on to explain that applying this privity definition to a relationship between a state agency and a private individual was a question of first impression in New Mexico. *Id*. Therefore, the court turned to several federal cases to provide it with guidance on this issue. *Id*.

Specifically, the *Rex* court examined *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1361 (6th Cir. 1975), in which the court considered whether the principles of *res judicata* barred the EEOC from bringing a claim of sex discrimination against Kimberly-Clark based on a prior private claim that had already been settled by the private parties. The court concluded that the EEOC was not a party to the earlier settlement agreement because "the EEOC sues to vindicate the public interest, which is broader than the interests of the charging parties." *Id*.

The *Rex Inc.* court also examined *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1541-42 (9th Cir. 1987), where the court considered whether an employee's settlement with her employer rendered an EEOC action based on her complaint moot. The court held that despite the fact that the employee's personal claims were rendered moot, the EEOC's claims were not moot because its right of action was independent of the employee's private action rights. The court explained that the EEOC "is not merely a proxy for the victims of discrimination," but "acts also to vindicate the public interest in preventing employment discrimination." *Id*. at 1543 (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 326, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1980)) (citation omitted). Therefore, the court concluded: "By seeking injunctive relief 'the EEOC promotes public policy and seeks to vindicate rights belonging to the United States as sovereign.' ... [The employee's] settlement does not moot the EEOC's right of action seeking injunctive relief to protect employees as a class and to deter the employer from discrimination." *Id*.

Finally, the *Rex Inc.* court considered at *Donovan v. Cunningham*, 716 F.2d 1455, 1462-63 (5th Cir. 1983) and *Labor v. Fitzsimmons*, 805 F.2d 682, 694 (7th Cir. 1986) for guidance on the privity issue. *Rex Inc.* at 955. In *Fitzsimmons,* the Seventh Circuit held that in an ERISA action the Secretary of Labor's interest is separate and distinct from a private plaintiff's interests and thus cannot be barred by the doctrine of *res judicata* after the private plaintiff settles. *See id.* (describing *Fitzsimmons*). Similarly, in *Donovan,* the court found that because the Secretary of Labor seeks to vindicate a broader public interest in an ERISA case than the private litigants, the Secretary is not precluded from re-litigating issues litigated in a prior private action. *Donavan* 716 F.2d at 1462-63.

After examining each of these cases, the *Rex Inc.* court concluded that when a state agency brings a claim pursuant to a statutory scheme in order to vindicate the state's public interest, it is not in privity with private plaintiffs and cannot be bound by a private settlement agreement. *Id.* at 955. Specifically the court stated:

> [t]hese cases persuade us that an agency, enforcing a statutory scheme, is not in privity with the private complainant when the agency is acting to vindicate a broader public interest protected under the statute. Therefore, the agency cannot be bound by a private settlement to the extent that the settlement would prevent the agency from protecting that public interest. However, different considerations apply when the agency is acting solely for the private benefit of the complaining individual and is seeking a remedy which only benefits that individual.

*Id.* at 955. Defendants claim that this holding somehow dictates a finding that there is privity between the Attorney General and the private litigants in the MDL with respect to the Attorney General's claim for restitution.

Defendants' reliance on *Rex Inc.* to support its position exposes the second fundamental flaw in its privity argument—the notion that restitution awards merely compensate individuals and does not serve any broader public interest. Underpinning Defendants' argument that the

Attorney General may seek civil penalties in this enforcement action, but is barred from seeking restitution, is the faulty assumption that restitution is merely designed to compensate private individuals for loses. To the contrary, courts throughout this country have long recognized that restitution serves a much broader purpose than merely compensating victims for their losses. Specifically, the law recognizes that restitution is a vehicle to "effectuate enforcement" of remedial statutes and "deter future violation by specific defendants and others who would contemplate the establishment of similar fraudulent schemes." *See FTC v. U.S. Oil and Gas Corp.*, 1987 U.S. Dist. LEXIS 16137, at *55-56 (S.D. Fla. 1987); *see also Minnesota Assoc. of Health Care Facilities, Inc. v. Minnesota Dept. of Pub. Welfare*, 742 F.2d 442, 451 (8th Cir. 1984) (restitution serves a "legitimate public purpose."); *FTC v. Ameridebt, Inc.*, 343 F.Supp.2d 451,458 (D. Md. 2004) (restitution "primarily serve[s] the public purpose of justice and deterrence").

For example, in *Commodity Futures Trading Commission v. Commercial Hedge Services, Inc.*, 422 F. Supp.2d 1057 (D. Neb. 2006), the plaintiff, the U.S. Commodity Futures Trading Commission (the "Commission"), brought an action alleging that the defendants violated the Commodity Exchange Act. *Id*. at 1058-59. The defendants moved for summary judgment with regard to the Commission's claim for restitution, asserting, like Defendants here, that the settlement agreements in the private actions barred the Commission's claims for restitution. *Id*. The defendants claimed, "restitution by the CFTC is meant to make the damaged persons whole and compensate them for a defendant's wrongful acts, and in this case most of the victims have already been made whole." *Id*. at 1060. The court however, rejected this argument, and held as follows:

> [b]ecause the defendants misunderstand the purpose of restitution
> when sought by a governmental regulatory and enforcement
> agency in the context of a public market, I respectfully disagree
> that the settlement agreements bar the Commission from seeking

> restitution for victims who have signed those agreements and received money as a result.

*Id*.

Similarly, here Defendants misunderstand the purpose of the Attorney General's claims for restitution. The Attorney General is not making restitution claims for the consumers who are Class Members in the MDL, but rather to protect the broader public interest of the State of New Mexico. Therefore, the State's restitution claims must not be dismissed.

Additional support for this position can be found in the case of *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1422-23 (11th Cir. 1998). In *Herman,* private litigants brought a class action against several defendants alleging, *inter alia*, ERISA violations. *Id*. at 1416-7. The class action eventually settled. However, following an investigation, the Secretary of Labor filed claims against two of the defendants also alleging ERISA violations. *Id*. at 1417. The defendants in that case argued that the private settlement agreement that they entered into with the class members barred the Secretary's action against them. *Id*. at 1422. The Eleventh Circuit disagreed and found that the Secretary's action was not barred because: (1) the Secretary was not a party to the settlement agreement; (2) the Secretary had a "special statutory role in seeking relief and assessing civil penalties for ERISA violations;" and (3) the Secretary's suit was brought to further the public interest. *Id*. at 1423-24.

Similarly, in this case, the Attorney General: (1) was not a party to the MDL Class Action Settlement; (2) has a special statutory role in seeking relief under NMUPA and the Dodd-Frank Act; and (3) brought this enforcement action not on behalf of individual consumers, but on behalf of the State to further the public interest. Therefore, the Attorney General's claim for restitution and other monetary damages under NMUPA and the Dodd-Frank Act cannot be barred by the Final Approval Order.

**2.      The Causes of Action Brought in the Current Litigation
are not the Same Claims Brought in the MDL.**

In order for *res judicata* to apply, in addition to finding that the parties involved are the same or in privity, it also must be found that the subsequent suit is "based on the same cause of action" as the original suit. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (*quoting Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997)).

Defendants rely on *Plotner* and *Clark v. Haas Group, Inc.*, to support their contention that "as long as the same set of operative facts is at issue, it makes no difference whether *the plaintiff* purports to assert *his or her claims* under a different legal theory." Defs Mot. pg. 10 (emphasis added). Importantly, the parties in each of the subsequent lawsuits in those cases were identical to or in privity with the ones in the original suit. *Plotner*, 224 F. 3d at 1169 (10th Cir. 2000)("Plotner, the Brown Trustees, Gamble, and Green were parties to *Plotner I*."); *Clark v. Haas Group, Inc.*, 953 F.2d 1235 (10th Cir. Colo. 1992)("Clark and HGI were the same, and only, parties in both suits."). As has been discussed at length, that is not the case here.

Not only are the parties not the same, or in privity with the parties in the MDL, the causes of action in each lawsuit are different.  In its Amended Complaint, the Attorney General has stated three causes of action, which specifically provide for enforcement by the Attorney General, meaning they were not, and could not, be brought as part of the MDL action. *See* Exhibit B at ¶¶ 83, 97, 107.

First, the Attorney General brings a claim for violations of NMUPA pursuant to N.M. Stat. Ann. §§ 57-12-8 and 57-12-15.[3] These statutes give explicit authority for the Attorney General to bring actions enforcing NMUPA. In the MDL Complaint, Plaintiffs lumped violations of NMUPA together with every other consumer protection statute in the country. *See* MDL Complaint ¶189. There was no individual cause of action for violations of NMUPA. The Attorney General's claim for violations of NMUPA is substantially different than the MDL's cause of action.

Moreover, the Attorney General's second cause of action for violations of Regulation Z, as promulgated by the Dodd-Frank Act, is undisputedly and wholly different than any cause of action in the MDL lawsuit. Not only is this claim not part of the MDL action, it *could not* have been, as the MDL action was brought by private consumers to vindicate their individual claims against Defendants. In fact, Plaintiff's claim for violation of Regulation Z, as promulgated by the Dodd-Frank Act, can *only* be brought by the Attorney General. *See* 12 U.S.C. § 5552(a)(2)(B)("The attorney general (or the equivalent thereof) of any State may bring a civil action in the name of such State against a national bank ... to enforce a regulation prescribed by the Bureau under a provision of this title and to secure remedies under provisions of this title or remedies otherwise provided under other law."). Defendants make no argument that this particular cause of action is not unique to this lawsuit and only available to this Plaintiff, nor could they

---

[3] "Whenever the attorney general has reasonable belief that any person is using, has used or is about to use any method, act or practice which is declared by the Unfair Practices Act [57-12-1 NMSA 1978] to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state alleging violations of the Unfair Practices Act." N.M. Stat. Ann. § 57-12-8; "In order to promote the uniform administration of the Unfair Practices Act [57-12-1 NMSA 1978] in New Mexico, the attorney general is to be responsible for its enforcement." N.M. Stat. Ann. § 57-12-15.

Because Plaintiff has not stated the same facts or causes of action as the MDL, Plaintiff's claims cannot be precluded under *res judicata*.

### 3. The Attorney General did not have any Opportunity to Litigate the State's Claim in the MDL.

As set forth above, in order for the doctrine of *res judicata* to bar a plaintiff's claims, the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit. *Plotner*, 224 F.3d at 1168 (10th Cir. 2000) (*quoting Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997)). It is beyond dispute that the Attorney General of New Mexico was not a party to the Payment Protection MDL and had no opportunity to participate in the litigation. Therefore, pursuant to firmly entrenched principles of *res judicata* jurisprudence, the Attorney General cannot be bound by the Final Approval Order.

"Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation." *Plotner*, 224 F.3d at 1170 (10th Cir. 2000). However, the claims brought by the Attorney General have not been, and *could not have been*, brought against Defendants in the MDL as Defendants would have this Court believe. Plaintiff states a claim for relief under Regulation Z, as promulgated by the Dodd-Frank Act. *See* Complaint ¶¶ 91-99. This particular claim is specifically reserved for attorneys general to litigate; therefore, the individual plaintiffs in the MDL Action did not have standing to bring this particular cause of action, and the State of New Mexico and its Attorney General were not able to fully and fairly litigate this claim. Additionally, Plaintiff has never before pursued these claims against anyone, much less Defendants; therefore, it cannot be precluded.

Because the Attorney General (1) was not a party to the MDL action, and was not in privity with any parties to the MDL action, (2) is bringing claims different than those litigated in the MDL action, and (3) did not have a full and fair opportunity to litigate its claims during the

MDL action, *res judicata* cannot be applied to preclude the Attorney General's claims in the present action.

> **B.      Neither the Attorney General, nor the State of New Mexico, is a Party to the MDL Settlement Agreement, and Therefore Cannot be Bound by the <u>Agreement's Release or the Injunction.</u>**

Defendants claim that the Attorney General is barred from bringing the present enforcement action pursuant to: (1) the MDL Settlement Agreement's release language; and (2) the MDL court's injunction prohibiting class members from re-litigating the claims released pursuant to the Agreement. The fundamental flaw in this argument is that neither the Attorney General of New Mexico, nor the State of New Mexico, were parties to the MDL Settlement Agreement and therefore may not be bound by the terms of the Agreement. In fact, none of the parties to the Settlement Agreement had the authority to release claims on behalf of the State of New Mexico. Therefore, it would be a clear Due Process violation to hold that the State of New Mexico is bound by the MDL Settlement Agreement.

Moreover, the MDL Court does not have *in personam* jurisdiction over the State of New Mexico, or its Attorney General. Therefore, that court's injunction cannot bind New Mexico or Attorney General King.

> **1.      The Plain Language of the Settlement Agreement Makes Clear that Neither the Attorney General, nor the State of New Mexico, <u>is a Party to the MDL Settlement Agreement.</u>**

The terms of MDL Settlement Agreement make clear that neither the State of New Mexico, nor the Attorney General, are parties to the Settlement Agreement. The Agreement states:

> This Settlement Agreement (the "Settlement" or Agreement") is entered into by and between Discover Bank and DFS Services LLC (collective, "Discover"), on the one hand, and Plaintiffs (defined below), individually and on behalf of the Settlement Class (defined below), on the other …

*See* Settlement Agreement attached hereto as Exhibit C. The Settlement Agreement goes on to define "Settlement Class" as:

> All **persons** in the United States **who were enrolled in or billed for** Discover Payment Protection, AccountGuard, Indentity Theft Protection, Profile Protect, Wallet Protection, The Register and/or Credit Score Tracker between January 21, 2004 and [date of preliminary approval of the settlement] (the "Class Period.

*See id.* at ¶21 (*emphasis added*).

In light of this unambiguous language, it is beyond dispute that neither the Attorney General, nor the State of New Mexico, are parties to this Settlement Agreement.

**2.      It Is Axiomatic That A Party Cannot Be Bound By a Settlement to Which it is not a Party.**

It is black letter law that no individual, entity, or governmental body can be bound by a settlement to which it is not a party. *See, e.g., E.E.O.C, v. Waffle House Inc.*, 534 U.S. 279, 294 (2002) (stating, "it goes without saying that a contract cannot bind a nonparty."); *AAL High Yield Bond v. Deloitte & Touche* LLP, 361 F.3d 1305, 1310 (11th Cir. 2004) (finding that individuals who are not class members are not bound by class settlement agreement); *Whetstone Candy Co. v. Kraft Foods Inc.*, 351 F.3d 1067 (11th Cir. 2003) (finding that despite language in the parties' settlement agreement regarding the defendant's subsidiary, the subsidiary cannot be bound by a settlement agreement because it was not a party to the settlement and did not "in some manner agree to accept its terms."); *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1422-23 (11th Cir. 1998) (finding that private settlement agreement did not bind Secretary of Labor because: (1) the Secretary was not a party to the settlement agreement; (2) the Secretary had a "special statutory role in seeking relief and assessing civil penalties for ERISA violations; and (3) the Secretary's suit was brought to further the public interest.); *Commodity Futures Comm'n v. Commercial Hedge Serv., Inc.*, 422 F. Supp. 2d 1057, 1061 (D. Neb 2006) (finding that when private parties settle disputes without the consent of a government agency that has a right to seek

-15-

relief in its own enforcement action, those settlements cannot preclude the government agency from seeking additional damages, disgorgement or additional restitution for those specific individuals as part of its enforcement remedies.); *United States v. Katz*, No. 10 Civ. 3335, 2011 U.S. Dist. LEXIS 59159, at *15 (S.D.N.Y. June 2, 2011) ("the general rule is that governmental agencies are not bound by private litigation when the agency's action seeks to enforce a federal statute that implicates both public and private interests.").

Indeed, to hold that the Attorney General or the State of New Mexico is bound the MDL Settlement would be a clear Due Process violation. As the Supreme Court of the United States explained in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the due process principle is a:

> 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process,' *Hansberry v. Lee*, 311 U.S. 32, 40, 85 L. Ed. 22, 61 S. Ct. 115 (1940), it being 'our deep-rooted historic tradition that everyone should have his own day in court.'

*Id.* at 846. Moreover, in the context of a class action, Due Process requires "'notice plus an opportunity to be heard and participate in the litigation,'" and "'at a minimum . . . an absent plaintiff [must] be provided an opportunity to remove himself from the class.'" *Ortiz*, 527 U.S. at 848 (*quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). Here, the Attorney General was not defined as a class member and the State did not have an opportunity to participate in the litigation. Therefore, it would be a clear violation of this country's deep-rooted Due Process principles to hold that New Mexico is bound by a settlement agreement of which it was not a part, had no role in negotiating, and did not even have an opportunity to opt-out.

In a matter nearly identical to the case at hand, the court in *Spinelli v. Capital One Bank, USA*, No. 8:08-cv-132-T, 2012 U.S. Dist. LEXIS 118667 at *1 (M.D. Fla. Aug. 22, 2012), held that it would be clearly violative of the Due Process clause to bind the Attorneys General of

Mississippi and Hawaii to the terms of a class action settlement agreement involving Payment Protection products because "the Attorney General of Mississippi and Hawaii were not defined as class members [in the settlement agreement] and did not have an opportunity to participate in the litigation or opt out of the class." *Id*. at *9. In *Spinelli*, Capital One Bank argued that the Attorneys General of Mississippi and Hawaii should be precluded from bringing an enforcement action against Capital One similar to the one that the Attorney General seeks to bring here. *Id*. at *7-8. Capital One's argument was identical to the one that Defendants make here –that the Payment Protection enforcement actions were barred by a settlement agreement and release in a Payment Protection consumer class action litigation. The court wholly rejected Capital One's argument, explaining:

> The Court's Order approving the settlement and closing this case did not bind the States of Mississippi and Hawaii. The Attorney General of Mississippi and Hawaii were not defined as class members and did not have an opportunity to participate in the litigation or opt out of the class. It would be a violation of the Due Process clause to now enjoin such Attorney General via the requested injunction. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)("due process requires at a minimum that the absent plaintiff be provided with an opportunity to remove himself from the class . . . [and] requires that the named plaintiff at all times adequately represent the interests of the absent class members.").

*Id*. at *9-10.

In addition to being a clear Due Process violation, holding that the Attorney General is bound by the MDL Settlement Agreement would create an unsound and untenable public policy. Indeed such a holding would create an incentive for defendants, like Defendants here, to ensure that when they settle class actions, they insert a term in the settlement agreement that purports to release claims on behalf of various governmental entities who are not parties to the litigation. By inserting this type of overly broad release language, these defendants would be able to avoid governmental prosecution or civil enforcement actions entirely. Establishing a precedent that

would countenance such activity would create unsound and unjust public policy.

   **3.**  **The Current Enforcement Action was not Brought "on Behalf of"**
        **the Settlement Class Members, Rather It Was Brought on Behalf of**
        <u>**the State of New Mexico.**</u>

  Despite the fundamental principles of contract and Constitutional law discussed above, Defendants argue that the release language in the MDL Settlement bars the current enforcement action. This argument fails for two reasons.

  First, the release in the MDL Settlement is made by the named plaintiffs, the Settlement Class Members and their "respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors in interest, assigned, and any authorized users of their accounts." *See* Exhibit B at 1.   The Settlement Agreement does not release claims that the State of New Mexico, or the Attorney General, have against Discover.  As set forth above, courts throughout the country have recognized that in enforcement actions, it is the state that is the real party in interest, not any individual consumers. *See e.g. West Virginia v. CVS Pharm., Inc.,* 646 F.3d 169, 176 (4th Cir. 2011) (where an attorney general "files suit independently of any consumer complaints, as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests, as well as the individual interests of the State's citizens," then the state, not any group of consumer, is the real party in interest.); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012).

  Moreover, the terms of NMUPA and the Dodd-Frank Act make clear that this enforcement action is not brought on behalf of individual consumers but on behalf of the State of New Mexico. Indeed the statute states that the Attorney General is explicitly charged with administration of NMUPA and may act *sua sponte* as the agent and legal representative of the State in civil proceedings to enforce the statute. *See* N.M. Stat. Ann. §§ 57-12-8 and 57-12-15. Additionally, Regulation Z, as promulgated under the Dodd-Frank Act, 12 USCS §

5552(a)(2)(B) says, "[t]he attorney general (or the equivalent thereof) of any State may bring a civil action in the name of such State against a national bank or Federal savings association."

Because this action was not brought "on behalf" of the Settlement Class Members, the release language may not serve as a bar to this case.

### 4.   The MDL Court does not have *In Personam* Jurisdiction Over the State of New Mexico and its Attorney General.

To enter a valid, enforceable injunction precluding a litigant from proceeding with civil litigation in another forum, the enjoining court must possess personal jurisdiction over the party. *See In re Rationis Enter., Inc. of Panama*, 261 F.3d 264, 267-68 (2d Cir. 2001) (vacating anti-suit injunction for determination of objection that Court lacked personal jurisdiction). As the *Rationis* Court emphasized, a "court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." *Id.* at 270 (citing *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990)). In this case, this requirement cannot be met.

The Final Approval Order was issued by a district court sitting in the Northern District of Illionois. The State of New Mexico has not submitted to Illinois' jurisdiction. Minimum contacts do not exist between the Attorney General or State of New Mexico and Illinois. The New Mexico Attorney General does not own property, have bank accounts, or regularly transact business in Illinois. Accordingly, there is no basis for personal jurisdiction over the State of New Mexico, and no order issued from the Northern District of Illinois can bind the State of New Mexico.

IV.   **CONCLUSION**

For all the reasons set forth above, Defendants' Motion to Dismiss must be denied.

**Date:  September 6, 2013**                    Respectfully submitted,

/s/ TURNER W. BRANCH
Scott Fuqua, Esquire, NM Bar No: 27699
Assistant Attorney General
**Office of the New Mexico**
**Attorney General Gary King**
408 Galisteo Street
Santa Fe, NM 87501
Phone: (505) 827-6000
Fax:    (505) 827-6036

Allen Carney Esquire, AR Bar No: 94122
Randall K. Pulliam, Esquire, AR Bar No: 98105
**Carney, Bates & Pulliam, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Phone: (501) 312-8500
Fax:    (501) 312-8505

Richard M. Golomb, Esquire, PA Bar No:
42845
Kenneth J. Grunfeld, Esquire, PA Bar No:
84121
**Golomb & Honik, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169

Turner W. Branch, Esquire, NM Bar No: 295
**The Branch Law Firm**
2025 Rio Grande Boulevard, NW
Albuquerque, NM 87104
Phone: (505) 243-3500
Fax:    (505) 243-3534

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on this 6th day of September, 2013, a true and correct copy of

**Plaintiff's Opposition to Defendant Discover's Motion to Dismiss Consumer Claims**

**Pursuant to Class Action Settlement** was filed and served on counsel for the Defendants listed

below via U.S. Mail:

Michael R. Comeau, Esquire
Marshall G. Martin, Esquire
**Comeau, Maldegen, Templeman & Indall, L.L.P.**
141 East Palace Avenue
Santa Fe, NM 87501

-and-

Julia B. Strickland, Esquire
Jason S. Yoo, Esquire
David W. Moon, Esquire
**Stroock & Stroock & Lavan, LLP**
2029 Century Park East
Los Angeles, CA 90067

*Attorneys for Defendants Discover Financial Services,*
*Discover Bank and DFS Services, L.L.C.*

/s/ TURNER W. BRANCH
**TURNER W. BRANCH, ESQUIRE**
*Attorney for Plaintiff*